FILED

2013 MAY -2 PM 3: 39

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, YOUNGSTOWN

| | |
|---|---|
| NANOLOGIX, INC, <br>     a Delaware Corporation with Its <br>     Principal Place of Business in Ohio, <br><br>     Plaintiff, <br><br> vs. <br><br> CHRISTOPHER NOVAK, <br>     a Citizen and Resident <br>     of California, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CIVIL NO. 4:13 CV 1000

JUDGE LIOI

JUDGE MAG. JUDGE BURKE

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW PLAINTIFF, NanoLogix, Inc., by and through its counsel, and

avers as follows.

## JURISDICTION, VENUE & JUSTICIABILITY

1. This is a diversity action sounding in breach of contract arising under state law for monetary and declarative relief.

2. Plaintiff is a Delaware corporation with its principal place of business in Trumbull County, Ohio.

3. Defendant is a natural person who is a citizen and resident of California.

4. The amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand ($75,000) dollars.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) (diversity jurisdiction) and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

6. Defendant entered into a contract to perform legal services for Plaintiff (exh. 1), whose principal place of business is in Ohio, and thus purposely availed himself of Ohio law and established sufficient minimum contacts with Ohio.

7. This Court has personal jurisdiction over Defendant.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (3).

9. On or about April 5, 2013, Plaintiff received from Defendant a statutory notice of Plaintiff's right to arbitrate its fee dispute with Defendant in a California forum. This notice implicitly indicated that suit could be filed as early as May 5,

2

2013 if Plaintiff did not submit to arbitration (exh. 2).  Further, on May 1, 2013, Defendant, in a literal race to the courthouse, served Plaintiff with a suit filed in the Northern District of California for recovery of fees he maintains are owed him (exh. 6).  These actions created a case or controversy between the parties within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act.

## ESSENTIAL FACTS OF THE CASE

10.    On or about February 22, 2008, the parties entered into a letter agreement for "Engagement of Legal Services," thereby forming a contract (exh.1).

11.    The nature of the legal services to be provided included matters of intellectual property law, principally patent prosecution before the United States Patent and Trademark Office ("USPTO") (*id.*). Defendant, from time to time, rendered additional legal advice and services beyond matters of intellectual property law, including but not limited to participation in negotiations regarding active legal disputes between the Plaintiff and certain directors and officers of Plaintiff, including Dana Allen.

12.    An implied term of that contract, as in any attorney-client contract for legal services, was that Defendant would perform his legal services in compliance with

3

the Rules of Professional Conduct ("RPC"), including, without limitation, Rules 1.6 (Confidentiality of Information) and 1.7 (Conflict of Interest: Current Clients).

13. In late-February or early-March 2008, legal disputes arose between the Plaintiff and Dana Allen, who was at that time a director and officer of the Plaintiff.

14. Notwithstanding the aforesaid ethical rules, by no later than November 19, 2009, Defendant had been appointed an officer of Sequoian Technologies ("Sequoian"), a corporation headed by one Dana Allen (exhs. 3, 4), a former director of Plaintiff against whom Plaintiff had since March 2008 active and unresolved legal disputes. These disputes remained unresolved throughout all times material to this action.

15. Sequoian, as stated on its website, is "an invention creation and marketing firm whose primary business is to market patents by Mr. Allen and others in a broad range." (Exh. 4.)

16. Plaintiff was at all times material to this action a startup biotech company focusing on research and development, whose principal asset was its intellectual property, to wit, a portfolio of patent applications and issued patents.

4

17. Plaintiff and Dana Allen have had, at all times material to this action, a hostile and adversarial relationship.

18. Defendant participated in negotiations relating to and was aware of the active and hostile adversarial relationship between the Plaintiff and Dana Allen.

19. There was a manifest conflict of interest when Defendant became an officer and "Intellectual Property Counsel" of Sequoian, an intellectual property company hostile to Plaintiff, while continuing to represent and advise Plaintiff in matters of intellectual property and on other legal matters. Upon information and belief, this conflict may have arisen as early as March or April 2008.

20. At no time did Defendant ever seek a waiver on the part of plaintiff of the conflict, as required by RPC 1.7(b).

21. The very day Plaintiff became aware of the conflict of interest, it discharged Defendant as counsel for the corporation (exh. 3).

22. Notwithstanding the conflict or discharge, Defendant has continued to demand payment for services rendered between the time the conflict arose and the date of discharge, said payment alleged to consist of $15,641 in cash, 646,939 unrestricted shares of plaintiff's stock with an estimated present value on the order

5

of approximately $129,000, and prejudgment interest (*see* exhs. 2 (notice of right to arbitration) and 5 (closing price of Plaintiff's stock on April 30, 2013)).

23.    After several years of intermittent correspondence and other communication with Plaintiff directed toward settlement, on April 2, 2013, Defendant mailed Plaintiff a "Notice of Client's Right To Fee Arbitration" under California Bar rules relating to attorney-client fee disputes (exh. 2).

24.    This notice purported to warn plaintiff that if it refused to arbitrate, Defendant can and may sue Plaintiff to recover unpaid fees as early as May 5.

25.    On April 30, however, Plaintiff's CEO received direct solicitation from a California attorney offering to represent Plaintiff in a lawsuit that Defendant had already filed (but not served) in a California court (exh. 7). The instant federal civil action in the Northern District of Ohio had already been drafted by that time and Plaintiff intended to file it on May 1, reasonably believing that no action could be commenced against it in California until at least May 5.

26.    Because of technical problems, the instant federal action could not be filed on May 1, but Plaintiff was served with Defendant's California suit on that day.

27.    In addition to seeking fees for services rendered after the conflict of interest arose, Defendant has retained fees (in the form of cash, stock, or both) already

6

paid to him for services rendered after the conflict arose, but before Plaintiff discovered its existence, estimated to be at least $150,000.

## COUNT ONE – BREACH OF CONTRACT

28. Plaintiff re-alleges the averments of ¶¶ 1-27 as if set forth fully herein.

29. When Defendant took a position as an officer of Sequoian at the same time he continued to serve as Plaintiff's counsel, he materially breached his contract with plaintiff.

30. Because of this material breach, Defendant was and is entitled to no compensation for any services rendered to Plaintiff after the conflict arose.

31. Nevertheless, Defendant received and continued to retain compensation for services rendered after the conflict arose but before Plaintiff became aware of it.

32. Defendant is liable to Plaintiff for all such compensation received and retained.

## COUNT TWO – UNJUST ENRICHMENT

33. Plaintiff re-alleges the averments of ¶¶ 1-32 as if set forth fully herein.

34. By retaining compensation for work performed unethically in the face of a manifest conflict of interest, Defendant has unjustly enriched himself at the expense of and detriment to Plaintiff.

35.    Defendant is liable to Plaintiff for all such compensation received and retained.

## COUNT THREE – RESTITUTION

36.    Plaintiff re-alleges the averments of ¶¶ 1-35 as if set forth fully herein.

37.    Defendant's legal representation of Plaintiff in the face of a manifest conflict of interest was unethical, unlawful, or both.

38.    As a result, any obligation on the part of Plaintiff to compensate Defendant was rendered null and void.

39.    Nevertheless, Defendant received and retained valuable compensation from Plaintiff for those services.

40.    Defendant is liable in restitution for the full value of the compensation he received from plaintiff after the conflict of interest arose, as if there never had been any representation agreement.

## COUNT FOUR – DECLARATION OF NON-LIABILITY

41.    Plaintiff re-alleges the averments of ¶¶ 1-40 as if set forth fully herein.

42.    Defendant has asserted, and continues to assert, that Plaintiff is liable to him for legal services allegedly rendered after the conflict arose, but for which compensation had not yet been paid, on the date of his termination as counsel.

8

43.     On information and belief within the meaning of Fed. R. Civ. P 11(b)(3), Defendant has imminent plans to sue Plaintiff in a forum of Defendant's choice as soon as the arbitration deadlines runs; that is, on or about May 5, 2013.

44.     For all the reasons set forth elsewhere in this Complaint, Plaintiff has no liability whatsoever to pay Defendant the fees he purported to earn in the face of a manifest conflict of interest.

45.     Accordingly, Plaintiff is entitled to a declaration that it is not liable to Defendant for any of the unpaid fees (cash and stock) he claims, or for interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this court enter judgment in its favor and against Defendant, as follows (cumulatively or in the alternative, as the case may be):

(1) damages against Defendant in the sum of all compensation paid to him during the conflict of interest, with compensation in stock converted to cash as reckoned at the highest share price as of the time it was issued or the date of judgment, whichever price is greater;

(2) disgorgement of all compensation paid to Defendant during the conflict of interest, with compensation in stock converted to cash as reckoned at the highest share price as of the time it was issued or the date of judgment, whichever price is greater;

(3) prejudgment interests and costs;

(4) a declaration that Plaintiff is in no way liable to Defendant for any of

the unpaid compensation he has been seeking; and

(5) such other relief as the court deems just and proper.

**DATED** this 2d day of May 2013

Respectfully submitted,

JOSHUA R. BARNHIZER
Ohio Sup. Ct. #0074026
General Counsel
NanoLogix, Inc

10

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues so triable.

**DATED** this 2d day of May 2013.

Respectfully submitted,


JOSHUA R. BARNHIZER
Ohio Sup. Ct. #0074026
General Counsel
NanoLogix, Inc

11