# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NANOLOGIX, INC.,                          )        CASE NO.  4:13-cv-1000
                                          )
                    PLAINTIFF,            )        JUDGE SARA LIOI
                                          )
vs.                                       )
                                          )        MEMORANDUM OPINION AND
                                          )        ORDER
                                          )
CHRISTOPHER NOVAK,                        )
                                          )
                    DEFENDANT.            )

This dispute over legal fees is here on diversity jurisdiction. Before the Court is the motion of defendant Christopher Novak ("defendant" or "Novak") to dismiss the Second Amended Complaint (Doc. No. 52 ["Sec. Am. Compl."]) of plaintiff NanoLogix, Inc. ("plaintiff" or "NanoLogix") (Doc. No. 60 ["Renewed Mot. to Dis."]). Plaintiff opposes the motion (Doc. No. 66 ["Opp'n to Renewed Mot. to Dis."]), and defendant has filed a motion for leave to file a reply instanter (Doc. No. 70 ["Mot. to File Reply Inst."]; Doc. No. 70-1 ["Reply to Renewed Mot. to Dis."]). Defendant's motion to file a reply instanter is GRANTED. For the reasons set forth below, defendant's renewed motion to dismiss is GRANTED IN PART.

## I.  BACKGROUND

The procedural history of this case was detailed in a December 9, 2013 Opinion and Order. (*See* Doc. No. 29 ["Dec. 9, 2013 Op. and Order".])  Familiarity with this decision is presumed. Because the procedural history is so completely intertwined with the factual foundation for the present dispositive motion, it is necessary to briefly

review both. NanoLogix, a Delaware corporation with its principal place of business in Ohio, is a "startup biotech company focusing on research and development, whose principal asset was its intellectual property, to wit, a portfolio of patent applications and issued patents." (Sec. Am. Compl. ¶ 17.) In early 2008, NanoLogix and Novak, an attorney and resident of California, entered into a letter agreement by which Novak agreed to provide NanoLogix with legal services relative to intellectual property law. (*Id.* ¶¶ 3, 10-11; Doc. No. 1-1 ["Eng. Letter".) "For some months prior [to the date of the letter agreement], Novak had been working [in this capacity] pursuant to an oral agreement with NanoLogix." (Sec. Am. Compl. ¶ 10.)

"In late February or early March of 2008, legal disputes arose between NanoLogix and one Dana Allen [("Allen")], who was at that time a director of the company who had helped recruit Novak to work for NanoLogix . . . ." (*Id.* ¶ 13.) "A key aspect of that dispute was that NanoLogix believed that [it] had potential legal claims against Allen for breach of fiduciary duty, a hostile takeover attempt, stock manipulation, and insider trading." (*Id.*)

Allen's company, Sequoian Technologies ("Sequoian"), "is an invention creation and marketing firm whose primary business is to market patents by Mr. Allen and others in a broad range." (*Id.* ¶¶ 15, 16.) According to the Second Amended Complaint, Novak had been, unbeknownst to NanoLogix, working for Allen's company for "some time" before Allen's relationship with NanoLogix soured. (*Id.* ¶ 13a.) In fact, on November 19, 2009, Novak was "appointed an officer and 'Intellectual Property Counsel'" for Sequoian. (*Id.* ¶ 15.) NanoLogix maintains, and for purposes of the renewed motion to dismiss Novak does not indicate that he disputes, that Novak never

2

advised NanoLogix of the dual representation, even after Novak became aware of the hostile relationship that had developed between NanoLogix and Allen. (*Id*. ¶¶ 13a, 14.) The "very day" NanoLogix became aware of Novak's dual role (November 19, 2009), it discharged Novak as intellectual property counsel for the company. (*Id*. ¶ 22; Doc. No. 1-3 ["Nov. 9, 2009 Letter from B. Barnhizer"].)

Following his discharge, Novak demanded payment from NanoLogix for legal services rendered. (*Id*. ¶ 23.) On April 2, 2013, Novak mailed NanoLogix a "Notice of Client's Right to Fee Arbitration" under the California Bar Rules relating to attorney-client fee disputes. According to the notice, Novak could bring suit against NanoLogix to recover his fees as early as May 5, 2013, if NanoLogix did not agree to arbitrate the fee dispute. (*Id*. ¶¶ 24-25.) Believing that it had until May 5, 2013 to bring suit against Novak, NanoLogix began drafting the original complaint in this action. (*Id*. ¶ 26.)

Novak won the "race to the courthouse," filing a suit against NanoLogix in the Northern District of California on April 30, 2013. (*Id*.; Dec. 9, 2013 Op. and Order at 281.)[1] On May 2, 2013, two days after Novak filed his complaint in California, NanoLogix initiated its own action in this Court. (*See* Doc. No. 1 ["Compl."].) In the original complaint, NanoLogix asserted claims for breach of contract, unjust enrichment, restitution, and a declaration of non-liability for fees for legal services rendered by Novak. (Compl. ¶¶ 28-45.) Each claim focused on Novak's failure to advise NanoLogix of his dual representation, and alleged that the resulting legal services were provided in an unprofessional manner. Novak asserted a counterclaim to recover his unpaid legal

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

fees. (Doc. No. 31 ["Ans. and CC"].) NanoLogix amended its complaint for the first time on July 25, 2013, adding a claim for fraud. (Doc. No. 21 ["Fst. Am. Compl."] ¶¶ 42-49.) This new claim also revolved around Novak's "implicit false representation" that his representation of NanoLogix was conflict free. (*Id*. ¶¶ 43-44.)

NanoLogix filed a motion in the California federal court to dismiss that action for want of personal jurisdiction, while Novak sought a dismissal and/or a stay of the present action. This Court denied Novak's motion, electing to proceed with the present action without interruption, and instructed the parties to go forward with discovery. (Dec. 9, 2013 Op. and Order at 286-87.) Toward that end, on January 30, 2014, the Court conducted a Case Management Conference wherein it set dates and deadlines to govern the case, including a July 31, 2014 deadline for non-expert discovery and an October 21, 2014 deadline for the completion of expert discovery. (Minutes from Jan. 30, 2014; Doc. No. 37 ["CMP"] at 336-37.) On two separate occasions, the Court granted the parties' joint motion to extend the deadlines in this case. (*See* Minutes from July 17, 2014, granting Doc. No. 62; Minutes from Oct. 22, 2014, granting Doc. No. 72.) The final discovery deadlines that governed this case provided for non-expert discovery to be completed by November 28, 2014 and expert discovery to be finished no later than February 20, 2015. (Doc. No. 73 ["Sec. Am. CMP"] at 588-89.) Neither party sought a further extension of these deadlines.

On February 14, 2014, Novak moved to dismiss the First Amended Complaint on the ground that NanoLogix's claims all sounded in legal malpractice, and were, therefore, time-barred under Ohio's one-year statute of limitations for legal malpractice claims. (Doc. No. 38 ["Mot. to Dis."] at 344, citing Ohio Rev. Code §

4

2305.11(A)(1).) In its opposition to the motion, NanoLogix argued primarily that the statutory limitations period for malpractice actions was inapplicable because: (1) its claims for affirmative relief were really compulsory counterclaims in the nature of recoupment; and (2) its fraud claim was subject to the longer four-year limitations period found at Ohio Rev. Code § 2305.09(C). (Doc. No. 46 ["Opp'n Mot. to Dis."] at 408-415.)[2] Meanwhile, back in California, the federal district court dismissed Novak's action on March 11, 2014. (Doc. No. 45 ["Not. of Dis."].)

On April 28, 2014, NanoLogix filed its Second Amended Complaint. This latest pleading did not add any new claims but, with respect to the fraud claim, included the following allegation relative to personal gain:

> By failing to disclose an active conflict [of] interest while under a legal duty to do so, Novak made the implicit false representation that no conflict existed and his loyalties to NanoLogix were undivided. Novak did so for his personal gain: either (1) to illicitly retain both the business of Allen and NanoLogix, something he was legally forbidden from doing; or (2) to gain access to NanoLogix's sensitive and confidential information for improper purposes.

(*Id.* ¶ 43.)

Novak filed his renewed motion to dismiss the latest amended complaint on July 3, 2014. Novak continues to maintain that all of plaintiff's claims are really time-barred malpractice claims. Novak also argues that plaintiff's fraud claim is fatally deficient because it does not satisfy the heightened pleading requirements for fraud.

---

[2] Novak filed a reply in support of his motion to dismiss. (Doc. No. 49 ["Reply to Mot. to Dis."].) Upon the filing of the Second Amended Complaint and the Renewed Motion to Dismiss, the Court denied Novak's earlier dispositive motion as moot. (Non-document order, dated July 7, 2014.) While this prior motion is no longer pending, the parties incorporated by reference into the briefing on the present motion the arguments they raised for and against the prior motion. (*See* Renewed Mot. to Dis. at 516; Opp'n to Renewed Mot. to Dis. at 540.) For this reason, the Court finds it necessary, on occasion, to refer to the prior round of briefing and the arguments raised therein.

5

(Renewed Mot. to Dis. at 517.) Moreover, he insists that NanoLogix's newly minted allegations of personal gain do not transform Nanologix's malpractice claim into a claim for fraud. (*Id*. at 516.)

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil procedure tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co. Ltd*., 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual

6

matter, accepted as true,'" to state a "'plausible'" claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

In entertaining a Rule 12(b)(6) motion, the Court may consider documents that are referred to in the pleadings and are integral to the claims without converting the motion to one for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citation omitted); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss). The Eng. Letter and the Nov. 9, 2009 Letter from B. Barnhizer are specifically referenced in the Second Amended Complaint and are integral to plaintiff's claims. It is, therefore, appropriate to consider these documents in connection with defendant's pending motion to dismiss.

## III. DISCUSSION

Defendant argues that, regardless of the labels used in the Second Amended Complaint, all of plaintiff's claims are merely illustrations of the various ways of asserting malpractice. Under Ohio law, a legal malpractice action must be commenced within one year after the cause of action accrues.[3] Ohio Rev. Code § 2305.11(A). "An action for legal malpractice accrues, and the statute of limitations begins to run, 'when there is a cognizable event whereby the client discovers or should have discovered that

---

[3] The parties agree that Ohio law governs plaintiff's state law claims. (*See* Opp'n to Mot. to Dis. at 408 n.3; *see generally* Mot. to Dis.) Of course, an application of California law would not change the result as federal law governs the pleading requirements in federal court, *see Ridgeway v. Ford Dealer Computer Servs., Inc.*, 114 F.3d 94, 98 n.5 (6th Cir. 1997), and California also recognizes a one-year limitations period for malpractice claims. *See* Cal. C.C.P. § 340.6(a).

his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.'" *Roberts v. Hutton*, 787 N.E.2d 1267, 1277 (Ohio Ct. App. 2003) (quoting *Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, syllabus (Ohio 1989)). Because plaintiff filed suit more than one year after discovering defendant's undisclosed interest in Sequoian—the relevant cognizable event—Novak insists that plaintiff's claims are untimely. NanoLogix, in contrasts, argues that it may rely on the longer limitations period for fraud and rescission (four years under Ohio Rev. Code § 2305.09(C)), negligent misrepresentation (four years under Ohio Rev. Code § 2305.09(D)), unjust enrichment (six years under Ohio Rev. Code § 2305.07), and breach of a written contract (eight years under Ohio Rev. Code § 2305.06) to rescue its claims from a finding of untimeliness. It is, therefore, necessary to determine whether plaintiff's claims are really malpractice claims masquerading as other causes of action.

Malpractice involves "the professional misconduct of members of the medical profession and attorneys." *Muir v. Hadler Real Estate Mgmt. Co*., 446 N.E.2d 820, 822 (Ohio Ct. App. 1982). It does not matter whether the professional misconduct is couched in terms of negligence or contract breach. *Roberts*, 787 N.E.2d at 1277; *Muir*, 446 N.E.2d at 822. "Malpractice by any other name still constitutes malpractice." *Muir*, 446 N.E.2d at 822. Whether the asserted facts support a malpractice action is "determined not from the form of the pleading or procedure, but from the gist of the complaint." *Hibbett v. Cincinnati*, 446 N.E.2d 832, 836 (Ohio Ct. App. 1982) (citation omitted); *see Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, No. 98861, 2014 WL 72538, at *7

8

(Ohio Ct. App. Jan. 9, 2014) ("When the gist of a complaint sounds in malpractice, the other duplicative claims, even those labeled as fraud and breach of contract, are subsumed within the legal-malpractice claim.") (citing *Hibbett*, 446 N.E.2d at 836). The gist of a claim sounds in malpractice when the allegations focus on the *manner* in which the attorney represented the client. *Muir*, 446 N.E.2d at 822 ("An action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of" Ohio Rev. Code § 2305.11.); *see Endicott v. Johrendt*, No. 99AP-935, 2000 WL 796576, at *4 (Ohio Ct. App. June 22, 2000) (actions which "arise out of the manner in which [the plaintiff] was represented [fall] within the attorney/client relationship" and constitute malpractice) (quotation marks and citation omitted).

### A. Breach of Contract, Unjust Enrichment, Rescission, and Declaratory Judgment

With respect to the breach of contract, unjust enrichment, rescission, and declaratory judgment claims, plaintiff contends that it was an implied term of the parties' contract for legal services that Novak owed a duty of good faith and fair dealing. (Sec. Am. Compl. ¶ 12.) Plaintiff further alleges that defendant breached that implied duty by concealing the existence of his dual representation, even after he became aware of the hostile relationship that had developed between plaintiff and Allen. (*Id.* ¶¶ 14, 20, 30.) This concealment constituted a material breach of the letter agreement. (*Id.* ¶ 30.) Moreover, because defendant received compensation for work which was tainted by the concealment of an obvious conflict, plaintiff avers that defendant was unjustly

compensated  (*id*. ¶ 35), entitling plaintiff to rescission and restitution and a declaration of non-liability for attorney's fees. (*Id*. ¶¶ 38-41, 54.)

Notwithstanding plaintiff's labels, these claims are all subsumed within the concept of legal malpractice. For each claim, plaintiff alleges that the legal representation it received from defendant was deficient because defendant was operating under an impermissible conflict of interest. Applying the manner of representation standard above, these claims arise from the manner in which defendant provided legal services to plaintiff and, therefore, are nothing more and nothing less than untimely malpractice causes of action. *See, e.g., Dottore*, 2014 WL 72538, at *7 (breach of contract and promissory estoppel claims were "properly subsumed in the malpractice claim"); *Hibbett*, 446 N.E.2d at 836 (breach of contract and tort claims arising out of manner in which attorney represented plaintiff in criminal prosecution were really malpractice claims subject to the one-year statute of limitations).

### B.  Fraud

The fraud claim requires separate analysis. Even in the context of the attorney-client relationship, it is possible to allege fraud separate from malpractice. *See Warman v. L. Patrick Mulligan & Assoc. Co*., No. 22503, 2009 WL 1114479, at *3 (Ohio Ct. App. Apr. 17, 2009) ("not all fraudulent conduct committed by an attorney will fall under the umbrella of a general malpractice claim, although the elements of fraud must be specifically pled in the complaint") (citing *DiPaolo v. DeVictor*, 555 N.E.2d 969, 975-76 (Ohio Ct. App. 1988)); *see also Gullatte v. Rion*, 763 N.E.2d 1215, 1219 (Ohio Ct. App. 2000) (when "an attorney provides services that are not necessarily legal in nature,

the attorney's actions may constitute a cause of action for fraud separate from a malpractice claim") (citation omitted).

Plaintiff's allegations of a breach of the duty of good faith and fair dealing do not, on their own, elevate a fraud claim above the level of legal malpractice. "The very existence of [the attorney-client] relationship raises a presumption that an attorney acted in good faith in handling his client's affairs." *DiPaolo*, 555 N.E.2d at 975 (citation omitted). "In order to rebut that presumption and sufficiently allege a cause of action for fraud against [an] attorney[] in a situation where the gist of the complaint involves legal malpractice," a plaintiff "must have specifically alleged" that the attorney "committed the actions for [his] own personal gain." *Id*. at 975-76 (internal citation omitted); *see Gullatte*, 763 N.E.2d at 1219 (where actions are not legal in nature or are for personal gain, a separate fraud cause of action will lie); *see, e.g., Hicks v. Garrett*, No. 2011CA00109, 2012 WL 3194376, at *14 (Ohio Ct. App. Aug. 6, 2012) (allegation that attorney "committed the actions for her own personal gain" was sufficient to set forth a separate fraud claim); *Dallas v. Childs*, No. 65150, 1994 WL 284991, at *3 (Ohio Ct. App. June 23, 1994) (same).[4]

According to the Second Amended Complaint, defendant was motivated by two possible types of personal gain: "(1) to illicitly retain both the business of Allen

---

[4] Dismissing the persuasive authority of *Hicks* and *Dallas*, two cases permitting separately pleaded fraud claims where personal gain was alleged, Novak argues that the allegations in plaintiff's fraud claim are more in tune with *Thomas v. Kramer*, 954 N.E.2d 1235, 1242 (Ohio Ct. App. 2011). In *Thomas*, the state appellate court found plaintiff's unjust enrichment claim could not stand independent of a legal malpractice claim. Though *Thomas* also involved an attorney with conflicted loyalties, there was no allegation that his dual representation resulted in a personal gain. In fact, the complaint alleged that, "[a]s a result of the conduct of [the attorney], *the other Defendants became unjustly enriched*." *Id*. (emphasis supplied by the appellate court).

and NanoLogix . . . ; or (2) to gain access to NanoLogix's sensitive and confidential information for improper purposes." (Sec. Am. Compl. ¶ 43.) The desire to continue to receive attorney's fees for services offered in an unprofessional manner is "not the type of personal gain that elevates a concealment during the course of legal representation from an act of malpractice to an act of fraud." *Dottore*, 2014 WL 72538, at *8 (rejecting a an attempt to plead personal gain where it was alleged merely that the attorneys sought nothing more "than keeping the Dottore Plaintiffs' business and avoiding a malpractice claim") (citing *Gullatte*, 763 N.E.2d at 1219); *see Endicott*, 2000 WL 796576, at *5 (obtaining a contingent fee and maintaining "a financially rewarding co-counsel relationship in an unrelated case" did not constitute "the type of personal profit" necessary to set forth a fraud claim). Accordingly, the allegation that defendant intended to keep receiving attorney's fees for representing NanoLogix is insufficient to permit a fraud claim to be maintained separately from a claim of malpractice.

NanoLogix's second asserted interest—to gain access to sensitive and confidential information for improper purposes—gets at the type of personal profit that is separate and apart from any fees associated with one's duties as a legal counselor. A claim that Novak wanted to use his standing with NanoLogix to put himself in a position to secret away the company's intellectual property does not arise out of the *manner* in which Novak provided legal services to NanoLogix. *See, e.g., Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*, Nos. 2:04-cv-494, 2:04-cv-584, 2007 WL 2572258, at *21 (S.D. Ohio Sept. 4, 2007) (allegation that attorney billed client for services rendered to another did not arise out of the *manner* attorney "exercised legal judgment" for the wrongly billed client). Indeed, it is incidental that Novak was

providing legal services to NanoLogix, at all. *See id*. What is important is that Novak was using the proximity to sensitive patent information his position as legal counsel afforded him to benefit himself, and, presumably, Sequoian. Such a personal benefit, distinct from the financial benefit enjoyed by all attorneys to receive compensation for their legal services, takes plaintiff's fraud claim beyond the bounds of legal malpractice. Plaintiff, therefore, may pursue a fraud claim on this narrow theory of personal gain.

Defendant also argues, however, that in the event that the Court finds  that a part of plaintiff's fraud claim satisfies the pleading requirements of Rule 8, the claim still fails under the heightened pleading standards of Rule 9(b) reserved for fraud claims. Ordinarily, the Court would now proceed to a Rule 9(b) analysis. However, two facts counsel against such an approach. First, plaintiff has indicated in its opposition brief that it intends to further amend its pleadings to comply with Rule 9(b). (Opp'n to Renewed Mot. to Dis. at 546-47.) Second, discovery has now closed. Therefore, in the interests of judicial economy and advancing the case, the Court will permit plaintiff to further amend its complaint as to the limited fraud claim outlined in this Memorandum Opinion and Order. Should defendant choose to file a motion for summary judgment on this claim, defendant will be permitted to raise the issue of particularity under Rule 9(b), as well as any arguments he may wish to advance under Rule 56.

     **C.**    **Recoupment**

Even though plaintiff's affirmative claims sounding in malpractice are subject to dismissal, it is plaintiff that shall have the last word on defendant's renewed motion to dismiss because plaintiff argues, and the Court agrees, that it is entitled to maintain a defensive claim of recoupment to defendant's counterclaim for attorney's fees.

Among the numerous defenses advanced by plaintiff in response to defendant's counterclaim for fees is the defense that "[t]he counterclaim is barred, in whole or in part, by the doctrine of recoupment." (Doc. No. 51 ["Am. Ans."] at 455.) It is plaintiff's position that, even if its affirmative claims sounding in malpractice are time-barred, it may still raise these allegations in the context of a defensive claim for recoupment.

The Ohio Supreme Court addressed the issue of whether time-barred malpractice claims can be used defensively to oppose an action for attorney's fees in *Riley v. Montgomery*, 463 N.E.2d 1246 (Ohio 1984). There, an attorney brought an action against his former client to recover attorney's fees. In defense, the former client raised allegations of malpractice in the form of negligence and breach of trust. While ultimately dismissing the defensive recoupment claim on summary judgment, the court held that:

> a claim which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim of the defendant arises out of the same transaction as the plaintiff's claim for relief, and when it is offered to reduce the plaintiff's right to relief.

> In this case, Riley's suit for payment on a note arises from the contract of employment between Riley and appellants. Appellants' claims of negligence and breach of fiduciary duty arise from the very same contract. Despite the fact that appellants are no longer entitled to bring an affirmative action for malpractice, under a recoupment theory they would be entitled to assert these claims in defense. Under [Ohio R. Civ. P.] 8(C) this right would exist whether the claims were called "counterclaims" or "defenses."

*Id*. at 1249-50; *Monastra v. D'Amore*, 676 N.E.2d 132, 139 (Ohio Ct. App. 1996) ("Even if at trial it is found that the statute of limitations has expired on [the client's] legal malpractice counterclaim, her claim may be relevant as a defense to [the attorney's] claim for attorney fees and would not be barred as a recoupment or set-off.")

14

While the court in *Riley* approved of the use of recoupment as a defense to an action for fees, even where affirmative claims of malpractice would be time-barred, it limited such a recovery to the "extent sufficient to satisfy the plaintiff's claim." *Riley*, 463 N.E.2d at 1248; *see Manos, Martin, Pergram & Dietz v. Saperstein*, No. 2:08-cv-0529, 2008 WL 5234362, at *2 (S.D. Ohio Dec. 12, 2008) (relying on *Riley* and finding that "the client may set up legal malpractice as a defense and set-off to a claim of fees up to the amount of fees sought to be recovered. What the client may not do, after the limitations period has run, is assert an affirmative claim for damages which exceeds the amount of legal fees which the firm is seeking from the client.") Notwithstanding the clear limitation in *Riley*, plaintiff argues that it is entitled to seek damages that exceed Novak's claim for attorney's fees because its recoupment claim against Novak should be treated as a compulsory counterclaim under Fed. R. Civ. P. 13. (Opp'n to Mot. to Dis. at 408.) Plaintiff's reliance on Rule 13(c) is misplaced.

Rule 13 of the Federal Rules of Civil Procedure requires parties to plead as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a). In support of its argument that its recoupment claim may seek damages in excess of those sought by Novak's fees claim, plaintiff relies on Rule 13(c), which provides that "[a] counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party." Fed. R. Civ. P. 13(c). In essence, plaintiff argues that Rule 13(c) can be used to maneuver around Ohio's one-year statute of limitations for malpractice claims.

15

In *Shady Grove Orthopedic Assoc. P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010), the Supreme Court addressed the interplay between federal procedural rules and conflicting state law, and the application of the Rules Enabling Act, 28 U.S.C. § 2072. In his concurring opinion, Justice Stevens wrote that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring.) He instructed that "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.* at 422-23. "And when such a 'saving' construction is not possible and the rule would violate the Enabling Act, federal courts cannot apply the rule." *Id.* at 423 (citing 28 U.S.C. § 2072(b)).

Employing Justice Stevens's "intertwined" test,[5] the Court finds that the one-year statute of limitations period contained in Ohio Rev. Code § 2305.11(A)(1) for malpractice actions is not displaced by Fed. R. Civ. P. 13(c). The statutory timing restriction is specifically limited to certain types of claims, including legal malpractice, and, it serves to define the scope of the state-created right, and application of Rule 13(c). To use Rule 13 to recover an affirmative remedy no longer available under state law

---

[5] There was no true majority opinion in *Shady Grove*, inasmuch as Scalia's opinion was only joined by thee other justices. Given the fragmentation of the Court, the majority of courts interpreting *Shady Grove*, including this Court, have treated Stevens's "intertwined" test as the holding of the Court, as it represented the narrowest interpretation of the Court's decision. *See Phillips v. Philip Morris Cos. Inc.*, 290 F.R.D. 476, 479-80 (N.D. Ohio 2013) (collecting cases).

would provide for a substantive right not envisioned by the state legislature.[6] *See Phillips v. Philip Morris Cos. Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013) ("Following *Shady Grove*, courts have looked to whether the state law in question applies to all claims, or whether its reach is limited to certain claims, as an indication of whether it substantially impacts state substantive rights.") (citations omitted). Indeed, application of Rule 13(c)'s broad treatment of counterclaims would have the effect of permitting plaintiff to recover by federal rule a substantive right lost to it by operation of state substantive law and its own dilatory conduct. *See, e.g., United States for Use & Benefit of Greenville Equip. v. United States Cas. Co.*, 218 F. Supp. 653, 656-59 (D. Del. 1962) (pre-*Shady Grove* decision ruling that plaintiff was not entitled to use Rule 13(c) to enlarge its right to seek affirmative damages in a defensive recoupment claim). Because Rule 13(c) would "enlarge" a substantive right created by state law, it cannot be applied to its fullest extent in this instance. Plaintiff, therefore, shall be permitted to assert malpractice as a basis for recoupment, but its right to recover on this theory shall be limited by the amount of fees sought in defendant's counterclaim.

### IV. CONCLUSION

For all of the foregoing reasons, defendant's renewed motion to dismiss (Doc. No. 60) is GRANTED IN PART. Plaintiff's affirmative claims sounding in malpractice in the Second Amended Complaint are DISMISSED. This action shall go

---

[6] Plaintiff notes that, under Ohio law, statutes of limitation are considered "procedural." (Opp'n to Mot. to Dis. at 408-09, citation omitted.) As courts interpreting *Shady Grove* have explained, however, even state statutes of limitations, which may be considered procedural for purposes of choice of law analyses, are treated as substantive under the *Erie* Doctrine. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013).

17

forward on plaintiff's fraud claim (limited as set forth in this Memorandum Opinion and Order),  defendant's counterclaim, and plaintiff's defensive claim for recoupment.

The Court now sets the following schedule. Plaintiff shall have leave until April 10, 2015 to file a Third Amended Complaint limited to the narrow remaining fraud claim, and defendant shall have until April 24, 2015 to file an amended answer.  Any motion for summary judgment must be filed by May 8, 2015, oppositions shall be due no later than May 29, 2015, and any replies must be filed by June 8, 2015. Going forward, counsel and the parties are advised that the Court does not condone the past practice in this case of incorporating by reference arguments raised in other briefs. The Court expects all briefing on summary judgment to stand alone and contain each argument offered in support of or against summary judgment. The Court shall issue a final case management plan and trial order setting forth all of the dates and deadlines that will govern the remainder of this litigation.

**IT IS SO ORDERED**.

Dated: March 26, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**