# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| NANOLOGIX, INC., | ) | CASE NO. 4:13-cv-1000 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CHRISTOPHER NOVAK, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on two motions. The first is the motion of plaintiff NanoLogix, Inc. ("plaintiff" or "NanoLogix") to dismiss or strike the counterclaim of defendant Christopher Novak ("defendant" or "Novak") (Doc. No. 81 ["Pl. Mot."]), which defendant has opposed (Doc. No. 82 ["Opp'n to Pl. Mot."]). The second is Novak's motion for summary judgment on his counterclaim, plaintiff's affirmative defenses to the counterclaim, and on plaintiff's third amended complaint. (Doc. No. 84 ["MSJ"].) Plaintiff opposed the summary judgment motion (Doc. No. 89 ["Opp'n to MSJ"]), and defendant replied (Doc. No. 91 ["MSJ Reply"]).

For the reasons that follow, plaintiff's motion to dismiss/strike defendant's counterclaim is denied, and defendant's motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

The factual and procedural history of this case has been previously detailed in a December 9, 2013 Opinion and Order (Doc. No. 29 ["OO"]), and in a March 26, 2015 Memorandum Opinion and Order (Doc. No. 77 ["MOO"]). Familiarity with these decisions is

assumed, but certain aspects of the factual and procedural history of this case are relevant to the pending motions. Therefore, the Court will briefly revisit certain matters.

Early in 2008, plaintiff entered into a legal services contract with defendant to provide intellectual property services. (Doc. No. 31-1 ["Engagement Ltr."].) Dana Allen ("Allen"), who was a director of NanoLogix, helped recruit Novak to perform this work. When Novak began working for NanoLogix, NanoLogix claims that it did not know that Novak and Allen knew each other, or that Novak may have represented Allen as a client and helped Allen found a company called Sequoian Technologies ("Sequoian").

Shortly after Novak was retained by NanoLogix, Allen's relationship with NanoLogix soured and Allen attempted to oust the Chairman and CEO of NanoLogix—Bret Barnhizer. That effort was unsuccessful, and Allen resigned as a director on March 22, 2008. NanoLogix discussed with Novak certain issues regarding Allen's relationship with NanoLogix and his departure as a director. During this time, NanoLogix maintains that it was not aware that Novak had a relationship with Allen and Sequoian, or the nature of that relationship.

On November 19, 2009, Bret Barnhizer learned that Novak was listed on Sequoian's website as Sequoian's Vice-President, Inventor and Patent Attorney, and it appeared to NanoLogix that Novak had a lawyer-client relationship with Sequoian and possibly, with Allen. From this Bret Barnhizer concluded that Novak had a conflict of interest, and terminated Novak that same day. (Doc. No. 89-5 (Termination Letter ["Term. Ltr."]).) According to Bret Barnhizer, Novak was terminated because Novak neglected to inform NanoLogix of his association with Allen, which NanoLogix viewed as a conflict of interest. (Doc. No. 89-1 (Deposition of Bret

2

Barnhizer ["Barnhizer Dep."]) at 1004-05.[1])

After he was discharged, Novak demanded payment from NanoLogix for legal services rendered.[2] In its second amended complaint, NanoLogix asserted claims against Novak for breach of contract, unjust enrichment, rescission, fraud, and a declaration of non-liability for fees for legal services rendered by Novak. (Doc. No. 52 (Second Amended Complaint ["SAC"]).) Novak answered the second amended complaint, and incorporated by reference the counterclaim for breach of contract to recover unpaid legal fees that he had asserted in response to the first amended complaint ("FAC"). (Doc. Nos. 59 at 519 (Ans. to SAC and Counterclaim), and 31 (Ans. to FAC and Counterclaim).) Plaintiff answered, incorporating by reference the answer and affirmative defenses that plaintiff had asserted in response to Novak's counterclaim to the first amended complaint "in view of the fact that Novak has added no new or revised matter to the counterclaim" that was pleaded at docket entry number 31. (Doc. Nos. 61, and 51 ["Ans. to Counterclaim"].) One of the affirmative defenses asserted by plaintiff is that the counterclaim is barred by the doctrine of recoupment. (Ans. to Counterclaim at 455.)

Defendant moved to dismiss plaintiff's second amended complaint for the reason that all of plaintiff's claims were really malpractice claims and therefore time-barred. (*See* MOO at 601-04.) The Court agreed that plaintiff's claims for breach of contract, unjust enrichment, rescission, and declaratory judgment, all sounded in malpractice and were time-barred by Ohio's one year statute of limitations. (*Id*. at 608-09.)

---

[1]  All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.

[2]  Novak sued NanoLogix in federal district court in California, but that action was dismissed. (*See* MOO at 604.)

The Court then analyzed plaintiff's fraud claim to determine if it, too, was barred by the statute of limitations for malpractice claims. Plaintiff alleged that Novak committed fraud by failing to disclose his alleged conflict of interest with respect to Allen and Sequoian for personal gain. (SAC ¶ 43.) Plaintiff advanced two theories regarding personal gain to Novak. The first was that Novak concealed his work for Sequoian from NanoLogix in order to retain the work from both companies. (*Id*.) The Court found that this theory of personal gain sounded in malpractice and, therefore, was time barred. (MOO at 610-11.)

Plaintiff's second theory was that Novak concealed his alleged conflict from NanoLogix in order to gain access to NanoLogix's sensitive and confidential information for improper purposes. (*Id*.) The Court found that this theory of personal gain was separate and apart from Novak's duties as an attorney, thus not time-barred. Therefore, plaintiff survived the motion to dismiss with respect to its fraud claim on this narrow theory. (*Id*. at 612.) The Court did not analyze the claim under Fed. R. Civ. P. 9(b), but permitted plaintiff to file a third amended complaint with respect to this single limited fraud claim; all other claims in the second amended complaint were dismissed. (*Id*. at 612, 616-17.)

With respect to plaintiff's affirmative defense of recoupment to Novak's counterclaim, the Court found that, even though plaintiff's affirmative claims sounding in malpractice were barred by the one year statute of limitations, plaintiff's affirmative defense of recoupment or set-off to defendant's counterclaim was not barred. (*Id*. at 612-14.)

Plaintiff filed its third amended complaint (Doc. No. 79 (Third Amended Complaint ["TAC"])), and defendant filed an answer (Doc. No. 80 (Answer to Third Amended Complaint ["Ans. to TAC"])). The content of those pleadings will be discussed in detail in the context of the

Court's analysis of plaintiff's motion to dismiss/strike defendant's counterclaim and defendant's motion for summary judgment.

## II. DISCUSSION

### A. Plaintiff's Rule 12(b)(6) and Rule 12(f) Motion is Denied

Plaintiff moves to dismiss or strike defendant's counterclaim pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure based on defendant's answer to the third amended complaint. In support of its motion, plaintiff argues that: (1) the title of the pleading does not reference a counterclaim; (2) no counterclaim is set forth in separately numbered paragraphs as required by Fed. R. Civ. P. 10(b); and (3) the former counterclaim is not incorporated by reference. For these reasons, plaintiff contends that the reference to the counterclaim in the answer's conclusion should be stricken pursuant to Rule 12(f), and if not stricken, the counterclaim should be dismissed pursuant to Rule 12(b)(6) because "Novak pleads nothing upon which relief can be granted." (Pl. Mot. at 645-46.) Plaintiff cites no legal authority in support of its motion. Defendant cites Fed. R. Civ. P. 13 in opposition, contending that the counterclaim was previously pleaded and pending, and need not be re-pleaded. (Opp'n to Pl. Mot. at 648.)

Courts have taken different approaches to determining the fate of counterclaims that are not re-pleaded in response to an amended complaint. *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 705-06 (D. Md. 2011) (discussing cases); *Mathews v. Ohio Pub. Employees Ret. Sys.*, No. 2:12-CV-1033, 2014 WL 4748472, at *4-*6 (S.D. Ohio Sept. 23, 2014) (discussing cases). Courts in this jurisdiction consider the requirements of the Federal Rules of Civil Procedure in the context of the circumstances and equitable considerations presented by a

5

particular case in deciding whether to strike or dismiss a counterclaim that has not been reasserted in response to an amended complaint. *Mathews*, 2014 WL 4748472, at *4 (citing *Hitachi Med. Sys. Am. Inc. v. Horizon Med. Grp*., No. 5:07CV02035, 2008 WL 5723531 (N.D. Ohio Aug. 29, 2008)) (further citation omitted).

In *Hitachi*, this Court denied plaintiff's motion to strike defendant's counterclaim because it was not timely reasserted in response to the plaintiff's amended complaint. In that case, the defendant "sought and obtained leave to file an answer to the amended complaint, and, in doing so, incorporated its counterclaim by reference." *Hitachi*, 2008 WL 5723531, at *4. The Court observed that "the process by which Horizon asserted its counterclaim is no model of procedural practice," but Hitachi had been on notice of the content of the counterclaim since it was timely asserted in response to the original complaint, the substance of the counterclaim had not changed since the initial filing, the parties had an opportunity to conduct discovery, there was no prejudice to plaintiff by allowing the counterclaim to stand, the potential prejudice to defendant was considerable, and failure to re-plead the counterclaim was inadvertent. *Id*. at *4-*5. Based on these findings, and considering the interplay between Rules 1, 13 and 15, the Court found that equitable considerations favored allowing the defendant to maintain its counterclaim. *Id*. at *5 (citations omitted).

In the instant action, Novak timely asserted his counterclaim in response to the first amended complaint (Ans. to FAC and Counterclaim at 305-10), and incorporated that counterclaim by reference in his answer to the second amended complaint (Ans. to SAC and Counterclaim). Indeed, in view of the fact that the counterclaim was unchanged, plaintiff incorporated by reference its answer to the incorporated counterclaim. (Doc. No. 61.)

6

In the "Conclusion" of Novak's answer to the third amended complaint, defendant states: "Wherefore, the defense prays this Court take naught of the complaint, dismissing the same in toto, allowing this claim to proceed only on Novak's counterclaim, and awarding Novak damages as outlined in that counterclaim as well as costs, interest, attorneys fees, and any other relief this Court may deem just, legal, and practicable." (Ans. to TAC at 643.) The Court's Memorandum Opinion and Order dismissing all of plaintiff's claims except the fraud claim, specifically states that "[t]his action shall go forward on plaintiff's fraud claim (limited as set forth in this Memorandum Opinion and Order), defendant's counterclaim, and plaintiff's defensive claim for recoupment." (MOO at 616-17.)

Like in *Hitachi*, Novak's answer to the third amended complaint referencing the counterclaim is no model of procedural practice. But the referenced counterclaim is the same counterclaim that defendant asserted in response to both plaintiff's first and second amended complaint, manifesting his intent to pursue those claims. Plaintiff has answered the counterclaim and the parties have had the opportunity to conduct discovery on the counterclaim. More significantly, plaintiff's third amended complaint presupposes the counterclaim. In the sole count (Count One—Declaration of Non-liability), plaintiff seeks a declaration that "NanoLogix is in no way liable to Novak for any of the unpaid compensation he has been seeking[.]" (TAC at 632.) Thus there can be no prejudice to plaintiff if the Court allows defendant to maintain his counterclaim.

Having considered the requirements of the federal rules, applicable case law, the pleadings and circumstances of this action, the Court exercises its discretion to permit Novak to maintain his counterclaim. Plaintiff's motion to dismiss/strike the defendant's counterclaim is

denied. *See Hitachi,* 2008 WL 5723531, at *4 (citations omitted); *AVKO Educ. Research Found. v. Morrow,* No. 11–13381, 2013 WL 1395824, at *10 (E.D. Mich. Apr. 5, 2013) (concluding that counterclaim remained pending even though the defendants had not re-filed it with their answer to the amended complaint) (citing *Hitachi,* 2008 WL 5723531, at *4-*5); *Mathews,* 2014 WL 4748472, at *6 (citations omitted).

**B. Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

8

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co*. 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> Summary judgment is required
>
> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex*, 477 U.S. at 322-23 (internal quotation marks and citation omitted).

9

**C. Choice of Law**

The engagement letter provides for the application of Ohio law to malpractice claims. (Engagement Ltr. at 314.) Previously, the parties agreed that Ohio law governs plaintiff's state law claims which, before the Court ruled on defendant's motion to dismiss, included claims for breach of contract, rescission, unjust enrichment, and fraud.[3] (*See* MOO at 606 n.3; Doc. No. 46 at 408 n.3 ("NanoLogix also agrees that Ohio law applies to this dispute. The law of California is similar[.]").)

In his motion, defendant applied Ohio law to his analysis. In opposing the motion, plaintiff, too, applied Ohio law but asserted in a footnote that it now believes that California law (which it contends is more favorable to it) should be applied, but did not provide the Court with a choice of law analysis ostensibly because of space limitations. (Opp'n to MSJ at 879 n.1.) Instead, plaintiff hedges, stating that while it "believes it is entitled to prevail even under Ohio law . . . should the Court agree with Novak on his dispositive motion under the law of Ohio,

---

[3] It is well settled that a federal court sitting in diversity applies the choice of law rules of its forum state. *Johnson v. Ventra Grp., Inc.,* 191 F.3d 732, 738 (6th Cir. 1999); *see Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). "'Ohio courts apply the principles in the Restatement (Second) of Conflict of Laws, directing courts to apply the law of the state with the most significant contacts to the dispute.'" *Newberry v. Silverman,* 789 F.3d 636, 643 (6th Cir. 2015) (quoting *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 230 n.3 (6th Cir. 1997)); *see also Tele–Save Merch. Co. v. Consumers Distrib. Co., Ltd.,* 814 F.2d 1120, 1122 (6th Cir. 1987) (quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.,* 453 N.E.2d 683 (Ohio 1983)). Under § 187(2) of the Restatement (Second) of Conflict of Laws, the law of the state chosen by the parties to a contract generally will be enforced, unless "[t]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or unless the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]" *Johnson,* 191 F.3d at 739  (quoting Restatement (Second) of Conflict of Laws § 187(2)); *see Schulke Radio Prods.,* 453 N.E.2d at 686 (citing Restatement (Second) of Conflict of Laws § 187); *Ohayon v. Safeco Ins. Co.,* 747 N.E.2d 206, 216 (Ohio 2001). The Court does not invoke § 187's deference to the parties' choice of law unless it is "satisfied that the parties have actually made an express choice of law regarding the issue before the court." *Ohayon,* 747 N.E.2d at 216 (citing Restatement (Second) of Conflict of Laws § 187 cmt. a (1971)). In this case, the parties have chosen Ohio law, and Ohio is not without a substantial relationship to the parties as NanoLogix has its principal place of business in Ohio.

NanoLogix would request leave to make the argument that California law applies, and under that law, it should prevail." (*Id.*)

Plaintiff's request is denied. Plaintiff previously agreed Ohio law applied. If plaintiff now believes otherwise, plaintiff should have briefed the matter accordingly. Having failed to do so, the Court finds that plaintiff (having previously agreed that Ohio law controls) has waived and forfeited its ability to assert this argument. Additionally, the Court's case management plan provides for only one opportunity to file summary judgment motions. Plaintiff will not be entitled to a second bite at the apple to brief an issue that it could have and should have addressed in its brief in opposition.

**D. Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on plaintiff's third amended complaint, defendant's counterclaim, and plaintiff's affirmative defenses to the counterclaim.[4]

**1. Plaintiff's third amended complaint**

Defendant argues that he is entitled to summary judgment on plaintiff's third amended complaint because the claim asserted was already dismissed by the Court, plaintiff has not pled a fraud claim, and there is no evidence in the record to show that plaintiff was damaged by any alleged fraud. (MSJ at 848-49.)

**a. Claim for declaration of non-liability previously dismissed**

As discussed, *supra*, all of plaintiff's affirmative claims for relief were previously dismissed, and the Court permitted plaintiff to proceed with a third amended complaint only as to

---

[4] Among the parties' arguments in support and opposition of the motion for summary judgment are arguments regarding the parol evidence rule. Those arguments were not relevant to the issues raised in the summary judgment motion, and are not discussed herein.

the fraud claim asserting that Novak did not disclose an alleged conflict of interest in order to gain access to sensitive and confidential information for an improper purpose. (MOO at 611-12.) Plaintiff's third amended complaint asserts a variety of allegations sounding in legal malpractice and raises a single count for "Declaration of Non-Liability." (TAC at 629-30.)

Plaintiff's claim for a declaration of non-liability was previously dismissed by this Court, as were all claims sounding in malpractice.[5] (MOO at 608-09.) (In any event, the declaration that plaintiff seeks—that defendant is not entitled to his fee and other requested damages—will be litigated in large part in conjunction with the defendant's counterclaim.) Thus, defendant is entitled to judgment as a matter of law on plaintiff's third amended complaint.

### b. Third amended complaint does not assert a fraud claim

Plaintiff's second amended complaint asserted a claim for fraud in count four,[6] and the Court granted leave for plaintiff to file a third amended complaint to assert its fraud claim only on the narrow theory that survived defendant's motion to dismiss. (MOO at 609-12.) Plaintiff's third amended complaint does not assert such a claim, or even allege the elements of a fraud

---

[5] It appears that plaintiff is attempting to assert an affirmative claim for recoupment in its third amended complaint. Recoupment is not an affirmative claim, it is a defense, like a set-off, that applies when the "parties' claims arise from the same transaction." *PNC Bank, Nat'l Ass'n v. Gator Piqua Partners, LLLP*, No. 3:12-CV-369, 2013 WL 4008807, at *2 (S.D. Ohio Aug. 5, 2013) (citations omitted).

[6] In its second amended complaint, plaintiff alleged that defendant had a duty to disclose his relationship with Allen and, by not disclosing that relationship, Novak implicitly falsely represented that he had no conflict and that his loyalties were undivided, that he intended plaintiff to rely on these false representations, that NanoLogix did so rely, that Novak committed this alleged fraud to gain access to NanoLogix's sensitive and confidential information for improper purposes, and that plaintiff was thereby injured. (*See* SAC ¶¶ 42-49.)

claim.[7] Even if those elements could be found scattered among the factual allegations of the third amended complaint, plaintiff has not satisfied the requirements of Fed. Rule Civ. P. 9(a), which requires that a party alleging fraud "'must state with particularity the circumstances constituting fraud[.]'" *See Cooper*, 2015 WL 5085770, at *8 (quoting Fed. R. Civ. P. 9(b)).

Even if the third amended complaint could be construed to contain a claim for fraud on the theory that Novak sought to gain NanoLogix's sensitive and confidential information for an improper purpose (which it does not), NanoLogix Chairman and CEO Bret Barnhizer testified at his deposition that NanoLogix has no evidence regarding any improper purpose for which Novak allegedly sought this information. (Barnhizer Dep. at 1024-25.) Plaintiff also has no evidence regarding damages that may have resulted from Novak's alleged conflict or failure to disclose it. (*Id*. at 1046-48; 1051-52.) Indeed, plaintiff concedes in its opposition to defendant's motion that it has no proof of damages to support an affirmative claim for relief—"[NanoLogix] does not seek any actual damages from Novak, because the harm it suffered by disclosing intellectual property and confidential legal/business advice to a lawyer with undisclosed loyalties is real, but not susceptible to proof." (Opp'n to MSJ at 878.)

---

[7] The elements of a fraud claim under Ohio and California law are similar. In Ohio, the elements are "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Cooper v. Green Tree Serv., LLC*, No. 5:14-CV-1750, 2015 WL 5085770, at *8 (N.D. Ohio Aug. 27, 2015) (quoting *HSBC Bank USA, Nat'l Trust Co. v. Teagarden,* 6 N.E.3d 678, 684 (Ohio Ct. App. 2013) (citation omitted)). The elements of fraud under California law are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013) (quoting *Engalla v. Permanente Med. Grp., Inc.,* 938 P.2d 903 (1997)).

13

Thus, the undisputed evidence in the record is that plaintiff cannot prove one or more elements of any such fraud claim, including damages.[8] Failure of the non-moving party to make a showing sufficient to establish the elements of its case for which it has the burden of proof entitles the moving party to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

Accordingly, defendant's motion for summary judgment on plaintiff's third amended complaint is granted.

### 2. Novak's Counterclaim

Novak's counterclaim alleges that plaintiff breached the legal services agreement between them by failing to pay both the cash and stock components of his compensation as provided by the engagement letter.[9] Defendant's motion for summary judgment seeks judgment on his counterclaim only as to liability. As to damages, Novak claims that he is owed $15,641.00 in cash, but that the stock valuation will require a damages hearing. (MSJ at 850-51.)

Novak's motion for judgment on his counterclaim is limited to reminding the Court that "[l]ikewise pending before this Court is Christopher Novak's counterclaim. That cause sounds in breach of contract for legal services. Novak's counterclaim offers that there is a contract, that Novak timely demanded payment on his contract, that he did not fail his duties under his contract, and that he is due $15,641.00 in cash and 646,939 shares worth approximately $80,000.00." (*Id*. at 841.) Novak's citation to his counterclaim pleading constitutes the entirety

---

[8] *See Infocision Mgmt. Corp. v. Found. For Moral Law, Inc.*, No. 5:08 CV 1342, 2009 WL 9408785, at *3 (N.D. Ohio Jan. 16, 2009) (cognizable damages proximately caused by purported fraud must be alleged to avoid dismissal of fraud claim).

[9] The Court notes that the jurisdictional and venue averments in the counterclaim refer to the Northern District of California. As previously noted, Novak instituted a now dismissed action against NanoLogix in district court in California. Because there is no question that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, and that venue is proper in the Northern District of Ohio, the erroneous references to the Northern District of California are harmless, and do not impact the authority of this Court over the counterclaim.

of his argument for summary judgment on his counterclaim, and he "requests summary judgment as against all claims and defenses of NanoLogix and in favor of Novak and also requests a damages hearing." (*Id.* at 839.)

Under Ohio law, the elements of a breach of contract claim that must be established in order to prevail are: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Issuer Advisory Grp. LLC v. Tech. Consumer Prods., Inc.*, No. 5:14CV1705, 2015 WL 458113, at *3 (N.D. Ohio Feb. 3, 2015) (quoting *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (citing, among authorities, *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008))).[10]

Fed. R. Civ. P. 56 provides, in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

On summary judgment, the moving party bears the initial burden of showing that the motion satisfies the standard for obtaining summary judgment. *See Celotex,* 477 U.S. at 323; Fed. R. Civ. P. 56(a). This means that, in the absence of evidence to the contrary, the movant's evidence must be sufficient to show that there is no genuine dispute of material fact that the movant is entitled to judgment as a matter of law. A party asserting that a fact cannot be

---

[10] The elements of a claim for breach of contract are essentially the same under both Ohio and California law. "The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing *CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (2008)).

15

genuinely disputed must support that assertion by citing to materials in the record such as those identified in Fed. R. Civ. 56(c).[11]

> "*[W]here the moving party has the burden*—the plaintiff on a claim for relief or the defendant on an affirmative defense—*his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" [*Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986)] (quoting Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* [99 F.R.D. 465, 488 (1984)]) (emphasis in original); *see also Shakur v. Schriro,* 514 F.3d 878, 890 (9th Cir. 2008); *Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.,* 270 F.3d 1036, 1056 (6th Cir. 2001); *cf. Timmer v. Mich. Dep't of Commerce,* 104 F.3d 833, 843 (6th Cir.1997) ("[I]f the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.") (citation omitted); 11 James William Moore, *Moore's Federal Practice* § 56.13[1], at 56–162 (3d ed. 2010) ("[I]f the movant has the burden of persuasion on an issue, the movant must make a stronger claim to summary judgment by introducing supporting evidence that would conclusively establish movant's right to a judgment after trial should nonmovant fail to rebut the evidence.").

*Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 916 (W.D. Tenn. 2011) *aff'd,* 559 F. App'x 508 (6th Cir. 2014) (emphasis in original).

Defendant's motion for summary judgment is devoted to the failings of plaintiff's affirmative defenses to the counterclaim. But Novak bears the burden of persuasion on his counterclaim for breach of contract, and the failings of plaintiff's defenses do not obviate the need for Novak, as the moving party, to carry his burden on summary judgment with respect to his counterclaim. It is Novak's burden to support his motion with evidence from the record sufficient to show that, in the absence of evidence to the contrary, he is entitled to judgment as a matter of law on his counterclaim. *Celotex,* 477 U.S. at 331 ("The burden of production imposed

---

[11] Those materials include depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers. *See* Fed. R. Civ. P. 56(c)(1)(A).

16

by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (citation omitted). All factual contentions must be made (or opposed) by evidence such as that described in Rule 56(c)(1)(A). A party asserting that a fact cannot be, or is, genuinely disputed must support that assertion with evidence in the record—the rule does not permit the asserting party to rely on mere allegations in a pleading. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d (1986) (citing Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U.S.C.App., p. 626 (the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial").

Novak's motion for summary judgment on his counterclaim relies entirely on the allegations in his pleading, and defendant has not properly supported his motion with evidence from the record as required by Rule 56 and the case law. The Court is not required to search the record for evidence that supports a moving party's motion. *See Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007) (a district court is not required to search the record to determine if it is bereft of a genuine issue of material fact) (citing *Street*, 886 F.2d at 1479-80); Fed. R. Civ. P. 56(c)(3).

Summary judgment motions that are not properly supported as required by Rule 56 must be denied. *See Celotex*, 477 U.S. at 331 (if the moving party has not fully discharged its initial burden of production, its motion for summary judgment must be denied). Accordingly, Novak's motion for summary judgment on his counterclaim is denied.

17

### 3. Plaintiff's affirmative defenses to the counterclaim

There are two components to Novak's motion for summary judgment on plaintiff's affirmative defenses to the counterclaim arising from defendant's alleged conflict. The first is that there is no evidence in the record to support a conflict. The second is that plaintiff cannot establish a conflict because plaintiff has not produced an expert to support plaintiff's allegations regarding Novak's alleged conflict of interest.

As the company's patent attorney, plaintiff contends that Novak was required to inform NanoLogix of potential and actual conflicts of interest that Novak had with respect to Allen and Sequoian. (Barnhizer Dep. at 1004-05.) NanoLogix does not dispute that Novak was hired to "work on our patent portfolio" and was not plaintiff's corporate counsel, nor does plaintiff dispute that the technologies pursued by NanoLogix and Sequoian are entirely different. (*See id*. at 960, 978, 1017-18.) Nevertheless, plaintiff maintains that Novak's relationship with Allen and Sequoian constituted an actual conflict of interest with his relationship with NanoLogix, and plaintiff frames the issue as whether Novak is entitled to fees "for legal work he performed under an actual, undisclosed conflict of interest[.]" (Opp'n to MSJ at 881.) But Novak avers that he was retained only to perform intellectual property services, NanoLogix had corporate counsel, Novak did not represent either Allen or Bret Barnhizer in the corporate governance dispute that erupted between them, and there was no conflict. (*See* Doc. No. 83-2 (Statement of Christopher Novak ["Novak Statement"]).)

Assuming the facts in a light most favorable to plaintiff, there is a fact dispute regarding Novak's alleged conflict. But defendant argues that plaintiff nevertheless cannot prevail on its affirmative defenses arising from Novak's alleged conflict of interest without an expert. Plaintiff

contends that an expert is not required because Novak's conflict of interest in this case is within the comprehension of a layperson.

In *Passerell v. Cordell*, No. 2014-A-0050, 2015 WL 2169274 (Ohio Ct. App. May 11, 2015), the plaintiffs in a malpractice action appealed the trial court's grant of summary judgment in favor of defendant attorney. In that case, the defendant attorney was confronted with a potential conflict of interest in representing both plaintiffs and their business in a court action. Plaintiffs did not produce an expert on the issue of conflict, and the trial court found that summary judgment was appropriate as follows:

> In the case at bar, it is undisputed that the Defendant, Stuart Cordell, was confronted with an apparent conflict of interest in representing the Plaintiffs and their business in a court action brought against them by a co-owner of the business. * * * In order for the jury to understand the standard of care by which to evaluate Cordell's conduct, it will be necessary to interpret and apply the Rules of Professional Conduct, to know whether there was an actual or potential conflict, and whether Cordell's actions or omissions in response to the apparent conflict fell below the applicable standard of care. Under the facts and circumstances in this case, the complexities of conflicts of interest and an attorney's professional obligations are not so obvious or well known as to be within the common knowledge of a layperson. The Court finds that in order to establish any of the Plaintiffs' allegations arising from actual or potential claims of conflict of interest, expert testimony is required to establish the appropriate standard of care, and the failure to disclose an expert on this issue, at this stage, is fatal to the Plaintiffs' ability to establish the elements necessary to establish a cause of action for legal malpractice.

*Passerell*, 2015 WL 2169274, at *7 (quoting the trial court's July 15, 2014 judgment entry).

The court of appeals in *Passerell* affirmed the trial court's grant of summary judgment in favor of defendant attorney. "Potential conflicts of interest are governed by the Rules of Professional Conduct, which are beyond the normal experience and understanding of laymen." *Passerell*, 2015 WL 2169274, at *8 (citing Ohio Prof. Cond. Rules 1.7, 1.9, and 3.7). "'Because of the very nature and complexity of the Code of Professional Responsibility and the conduct of

legal matters, expert testimony is required[.]'" *Id.* (quoting *Nw. Life Ins. Co. v. Rogers,* 573 N.E.2d 159, 163-64 (Ohio Ct. App. 1989)) (further citation omitted).

While expert testimony may not always be required in a conflict of interest or legal malpractice case, such is not the case here. *Rogers,* 573 N.E.2d at 164 (expert testimony required to support allegations of attorney misconduct "except in those cases which are so patently obvious as to negate this requirement"). Whether Novak had a potential or actual conflict of interest with respect to any of his dealings with NanoLogix, Allen, and Sequoian is a complex issue involving the rules of professional conduct governing Novak's conduct as an attorney, and it is not within the understanding of laymen. *See e.g., McInnis v. Hyatt Legal Clinics,* 461 N.E.2d 1295 (Ohio 1984) (expert testimony not required on issue of malpractice where lawyer effected service by publication of his client's pending divorce contrary to the specific instructions of his client). Plaintiff's attempt to analogize the conflict issues in this action to cases where an expert was not required because the matter was within the common experience of jurors is unavailing. (*See* Opp'n to MSJ at 879-81.)

Plaintiff further posits that no expert is required to establish that plaintiff violated some "arcane standard of care" relative to a malpractice action—the issue is "whether [Novak] had a conflict and was loyal to the company." (Opp'n to MSJ at 882.) Plaintiff cites *Krischbaum v. Dillon*, 567 N.E.2d 1291, 1300-01 (Ohio 1991) for the proposition that the purpose of the code of professional responsibility is to protect clients from harm that may occur if an attorney offers advice while having potentially conflicting interests, and *Hendry v. Pelland*, 73 F.3d 397, 401 (D.C. Cir. 1996) for the proposition that an attorney's breach of conflict of interest rules constitutes a breach of fiduciary duty. (Opp'n MSJ at 883-84.)

But plaintiff continues to miss the point. Even by characterizing Novak's alleged conflict as a breach of fiduciary duty rather than malpractice, the threshold issue remains the same— whether Novak had a potential or actual conflict of interest. To make that determination, it is necessary to interpret the applicable rules of conduct. Plaintiff's own citation to *Hendry* proves the point.

In *Hendry*, plaintiffs appealed the district court's grant of summary judgment to Pelland and his law firm on the Hendrys' claim for breach of fiduciary duty. *Hendry*, 73 F.3d at 401. In the District of Columbia, a violation of the rules of professional responsibility or the rules of professional conduct can constitute a breach of an attorney's common law fiduciary duty to the client. *Hendry*, 73 F.3d at 401 (quoting *Griva v. Davison*, 637 A.2d 830, 846-47 (D.C. 1994)). The District of Columbia Court of Appeals reversed the trial court's grant of summary judgment to Pelland and his firm on plaintiffs' claim for breach of fiduciary duty because, "[t]he Hendry's *expert testified that Pelland violated DR 5-105[,]*" and one of the plaintiffs testified that Pelland never discussed the possible conflicts with him. Thus, the court of appeals concluded that, viewed in a light most favorable to the plaintiffs, a reasonable jury could find that Pelland violated the disciplinary rules and breached his fiduciary duty of loyalty. *Id.* (emphasis added).

As discussed, *supra*, understanding an attorney's professional obligations with respect to conflicts of interest governed by the applicable conduct rules, whether to support a claim for

malpractice or breach of fiduciary duty,[12] is not within the knowledge of laypersons, and requires the testimony of an expert.

Accordingly, because plaintiff does not have an expert to support its allegations of conflict of interest, defendant is entitled to summary judgment with respect to plaintiff's affirmative defenses arising from Novak's alleged potential or actual conflicts of interest.[13]

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's motion to dismiss/strike defendant's counterclaim (Doc. No. 81) is denied. Defendant's motion for summary judgment (Doc. No. 84)

---

[12] Plaintiff also argues that "[w]hen a breach of fiduciary duty occurs, whether by a lawyer, employee or anybody else, the faithless servant doctrine applies, and the breaching party forfeits all compensation, even without any showing of damages by the aggrieved party[.]" (Opp'n to MJS at 887.) Unlike malpractice claims, plaintiff need not prove damages under the faithless servant doctrine to secure disgorgement of legal fees, and it is undisputed that plaintiff cannot establish damages as a consequence of any alleged conflict. (Barnhizer Dep. at 1046-47.) But a breach of duty underlies the faithless servant doctrine, and plaintiff contends that the duty Novak breached was his failure, as NanoLogix's attorney, to disclose his alleged conflict. (*Id.* at 1004 ("I believe that an attorney is required to inform his client of potential conflicts of interest.").) If there was no conflict, Novak breached no duty.

[13] In a footnote in its opposition brief, plaintiff states that, if the Court concludes that expert testimony is required to support plaintiff's conflict of interest allegations, the Court should afford plaintiff a "brief continuance to obtain one." Plaintiff suggests that it would be an abuse of this Court's discretion not to do so, citing *Monastra v. D'Amore*, 676 N.E.2d 132, 140 (Ohio App. 1996). (Opp'n to MSJ at 886, n.3.) In *Monastra*, the court of appeals stated in dicta that if expert testimony were required regarding an issue concerning legal fees, the trial court abused its discretion in not permitting D'Amore to obtain an expert where she had only recently obtained new counsel after her attorney withdrew, and Monastra filed a motion for summary judgment without leave. The situation in *Monastra* is vastly different than the situation presently before the Court.

Plaintiff's claims regarding Novak's alleged conflict of interest has been the central issue in this case since it was filed in 2013. The Court established a case management plan that provided dates and deadlines for conducting both expert and non-expert discovery (Doc. No. 73), and defendant's motion for summary judgment was filed in accordance with the schedule established by the Court. The expert discovery deadline was extended twice after it was first established. (*See* Doc. Nos. 37, 63 and 73.) Plaintiff sought no additional extensions of time to identify experts or conduct expert discovery, and discovery is closed. Moreover, plaintiff's footnote request for a continuance to obtain an expert provides no good cause why it failed to identify and obtain an expert within the deadlines established by the Court.

To the extent that plaintiff's counsel may be suggesting plaintiff did not obtain an expert because of a discussion at the Rule 16 conference, in which plaintiff's counsel advised the Court that he "was thinking of a legal expert, but wasn't sure if the Court would accept one, as it could go to an issue of law for the Court, not one of fact for the jury" (*Id.* at 884), the Court finds this excuse unpersuasive. It was counsel's duty to timely research whether an expert was necessary. Having failed to do this within the time allotted, plaintiff's request for additional time to identify an expert and conduct expert discovery is denied.

.

is granted in part and denied in part, as follows:

      Defendant's motion is granted with respect to the sole claim in plaintiff's third amended complaint;

      Defendant's motion is denied with respect to his counterclaim;

      Defendant's motion for summary judgment is granted with respect to plaintiff's affirmative defenses to the extent those defenses rely upon defendant's alleged conflict of interest.

      The motions for leave to file documents under seal in connection with the parties' motions (Doc. Nos. 85 and 88) are moot, and denied as such.

      The Court will conduct a Final Pretrial Conference in this case on June 15, 2016 at 1:30 p.m., and this case is scheduled for trial on a two-week standby basis on July 5, 2016. A Trial Order will be separately published.

      **IT IS SO ORDERED**.


Dated: March 25, 2016

                                           _____

                                           **HONORABLE SARA LIOI**
                                         **UNITED STATES DISTRICT JUDGE**